UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

**FILED**

**AUG 2 3** 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. ‾07-183  JDB |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | Violation:    15 U.S.C § 1 |
| BRITISH AIRWAYS PLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### PLEA AGREEMENT

The United States of America and British Airways Plc, ("defendant"), a public limited company organized and existing under the laws of England and Wales, hereby enter into the following Plea Agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P."):

### RIGHTS OF DEFENDANT

1.　　The defendant understands its rights:

　　(a)　　·to be represented by an attorney;

　　(b)　　to be charged by Indictment;

　　(c)　　as a public limited company organized and existing under the laws of England and Wales, to decline to accept service of the Summons in this case, and to contest venue and the jurisdiction of the United States to prosecute this case against it in the United States District Court for the District of Columbia;

　　(d)　　to plead not guilty to any criminal charge brought against it;

(e)     to have a trial by jury, at which it would be presumed not guilty of the charge and the United States would have to prove every essential element of the charged offense beyond a reasonable doubt for it to be found guilty;

(f)     to confront and cross-examine witnesses against it and to subpoena witnesses in its defense at trial;

(g)     to appeal its conviction if it is found guilty; and

(h)     to appeal the imposition of sentence against it.

### AGREEMENT TO PLEAD GUILTY
### AND WAIVE CERTAIN RIGHTS

2.     The defendant knowingly and voluntarily waives the rights set out in Paragraph 1(b)-(g) above, including all jurisdictional defenses to the prosecution of this case, and agrees voluntarily to consent to the jurisdiction of the United States to prosecute this case against it in the United States District Court for the District of Columbia.  The defendant also knowingly and voluntarily waives the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742, that challenges the sentence imposed by the Court if that sentence is consistent with or below the recommended sentence in Paragraph 8 of this Plea Agreement, regardless of how the sentence is determined by the Court. This agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b)-(c).  Pursuant to Fed. R. Crim. P. 7(b), the defendant will waive indictment and plead guilty at arraignment to a two-count Information to be filed in the United States District Court for the District of Columbia.  Count One of the Information will charge the defendant with participating in a combination and conspiracy to suppress and eliminate competition by fixing the cargo rates (as defined below) charged to customers for international air shipments, including

2

shipments to and from the United States, beginning in or about March 2002 and continuing until February 14, 2006, the exact dates being unknown to the United States, in violation of the Sherman Antitrust Act (15 U.S.C. § 1)(hereinafter referred to as the "cargo conspiracy").  Count Two of the Information will charge the defendant with beginning in or about August 2004 and continuing until February 14, 2006, the exact dates being unknown to the United States, entering into and engaging in a combination and conspiracy to suppress and eliminate competition by fixing the passenger fuel surcharge charged to passengers for long-haul international air transportation, including between the United States and the United Kingdom, in violation of Section 1 of the Sherman Act (15 U.S.C. § 1)(hereinafter referred to as the "passenger conspiracy").

3.    The defendant, pursuant to the terms of this Plea Agreement, will plead guilty to the criminal charges described in Paragraph 2 above and will make a factual admission of guilt to the Court in accordance with Fed. R. Crim. P. 11, as set forth in Paragraph 4 below.

## FACTUAL BASIS FOR OFFENSES CHARGED

4.    Had this case gone to trial, the United States would have presented evidence sufficient to prove the following facts against the defendant:

(a)    As to Count One of the Information:

(i)    For purposes of this Plea Agreement, the "relevant period" for the cargo conspiracy is that period from in or about March 2002 until February 14, 2006.  During the relevant period for the cargo conspiracy, the defendant was a public limited company organized and existing under the laws of England and Wales.  The defendant has its principal place of business in Harmondsworth, England and employed 5000 or more

3

individuals.  During the relevant period for the cargo conspiracy, the defendant, through

its business unit British Airways World Cargo ("BAWC"), provided international air

transportation for cargo between the United States and the United Kingdom.  For its air

cargo shipments, the defendant charged its customers a rate that consisted of both a base

rate and various surcharges and fees, such as a fuel surcharge and a security surcharge.

The base rate, surcharges, and fees charged to customers by the defendant are

collectively referred to herein as the "cargo rate."  During the relevant period, the

defendant's sales of international air cargo shipments that originated in the United States

totaled approximately $488,650,013.

     (ii)    During the relevant period, the defendant, through officers and employees

of BAWC,  including high-level personnel of BAWC, participated in a conspiracy among

major international air cargo carriers, the primary purpose of which was to suppress and

eliminate competition by fixing components of the air cargo rates charged to customers

for international air shipments, including shipments to and from the United States.  In

furtherance of the conspiracy, the defendant, through officers and employees of BAWC,

engaged in discussions and attended meetings among representatives of other major

international air cargo carriers.  During these discussions and meetings, agreements were

reached to fix components of the cargo rates to be charged to purchasers of air cargo

shipments in the United States and elsewhere.

     (iii)    During the relevant period for the cargo conspiracy, air cargo shipments

sold by one or more of the conspirator carriers, and aircraft necessary to transport

the air cargo shipments, as well as payments for the air cargo shipments, traveled in

4

interstate and foreign trade and commerce. The business activities of the defendant and its co-conspirators in connection with the sale and provision of international air cargo shipments affected by this conspiracy were within the flow of, and substantially affected, interstate and foreign trade and commerce.

(b)     As to Count Two of the Information:

(i)     For purposes of this Plea Agreement, the "relevant period" for the passenger conspiracy is that period from in or about August 2004 until February 14, 2006. During the relevant period, the defendant was a public limited company organized and existing under the laws of England and Wales. The defendant has its principal place of business in Harmondsworth, England. During this relevant period, the defendant provided international air transportation for passengers, was engaged in the sale of flights between the United States and the United Kingdom, and employed 5000 or more individuals. For its international air transportation services for passengers, the defendant charged its customers a passenger fare that consisted of both a base fare and a fuel surcharge. During the relevant period, the defendant's sales of international air transportation for passengers that were billed, directly or indirectly, to U.S. customers totaled at least $908,831,173.00.

(ii)     During the relevant period, the defendant, through its officers and employees, including high-level personnel of the defendant, participated in a conspiracy with another major international passenger airline, the primary purpose of which was to suppress and eliminate competition by fixing the passenger fuel surcharge charged to passengers for long-haul international air transportation. Long-haul international air

5

transportation includes the defendant's international flights between the United Kingdom and certain foreign destinations, including the United States. In furtherance of the conspiracy, the defendant, through its officers and employees, engaged in discussions and attended meetings with representatives of the other major international airline. During these discussions and meetings, agreements were reached to fix the passenger fuel surcharge to be charged to passengers for long-haul international flights between the United Kingdom and the United States.

   (iii) During the relevant period for the passenger conspiracy, flights sold by one or more of the conspirator companies traveled in interstate and foreign trade and commerce. Defendant's passenger operation transported people on scheduled flights internationally between the United Kingdom and the United States. The business activities of the defendant and its co-conspirator in connection with the sale of air transportation services affected by this conspiracy were within the flow of, and substantially affected, interstate and foreign trade and commerce.

## POSSIBLE MAXIMUM SENTENCE

5. The defendant understands that the statutory maximum penalty which may be imposed against it upon conviction for each violation of Section One of the Sherman Antitrust Act is a fine in an amount equal to the greatest of:

   (a) $100 million (15 U.S.C. § 1);

   (b) twice the gross pecuniary gain the conspirators derived from the crime (18 U.S.C. § 3571(c) and (d)); or

   (c) twice the gross pecuniary loss caused to the victims of the crime by the

conspirators (18 U.S.C. § 3571(c) and (d)).

6.    In addition, the defendant understands that for each count:

(a)    pursuant to 18 U.S.C. § 3561(c)(1), the Court may impose a term of probation of at least one year, but not more than five years;

(b)    pursuant to §8B1.1 of the United States Sentencing Guidelines ("U.S.S.G.," "Sentencing Guidelines," or "Guidelines") or 18 U.S.C. § 3563(b)(2) or 3663(a)(3), the Court may order it to pay restitution to the victims of the offense; and

(c)    pursuant to 18 U.S.C. § 3013(a)(2)(B), the Court is required to order the defendant to pay a $400 special assessment upon conviction for the charged crime.

## SENTENCING GUIDELINES

7.    The defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in effect on the day of sentencing, along with the other factors set forth in 18 U.S.C. § 3553(a), in determining and imposing sentence, unless the Court, as authorized by U.S.S.G. §1B1.11, determines that use of the Sentencing Guidelines in effect on the date that the defendant is sentenced would violate the *ex post facto* clause of the United States Constitution. The defendant understands that the Guidelines determinations will be made by the Court by a preponderance of the evidence standard. The defendant understands that although the Court is not ultimately bound to impose a sentence within the applicable Guidelines range, its sentence must be reasonable based upon consideration of all relevant sentencing factors set forth in 18 U.S.C. § 3553(a). Pursuant to U.S.S.G. §1B1.8, the United States agrees that self-incriminating information that the defendant provides to the United States pursuant to this Plea Agreement will not be used to increase the

volume of affected commerce attributable to the defendant or in determining the defendant's

applicable Guidelines range, except to the extent provided in U.S.S.G. §1B1.8(b).

## SENTENCING AGREEMENT

8.    Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant

agree that the appropriate disposition of Counts One and Two of this case is, and agree to

recommend jointly that the Court impose, a sentence requiring the defendant to pay to the United

States a criminal fine of $300 million payable in full before the fifteenth (15th) day after the date

of judgment ( "the recommended sentence"). The parties agree that there exists no aggravating

or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by

the U.S. Sentencing Commission in formulating the Sentencing Guidelines justifying a departure

pursuant to U.S.S.G. §5K2.0. The parties agree not to seek or support any sentence outside of

the Guidelines range nor any Guidelines adjustment for any reason that is not set forth in this

Plea Agreement. The parties further agree that the recommended sentence set forth in this Plea

Agreement is reasonable.

**Guidelines Analysis**

(a) Pursuant to U.S.S.G. § 8C2.5, the defendant's culpability score is 8. This

number is calculated by starting with 5 points pursuant to U.S.S.G. § 8C2.5 (a); adding 5

points because the organization has 5000 or more employees and an individual within

high-level personnel of the organization participated in, condoned, or was willfully

ignorant of the offenses, pursuant to U.S.S.G. § 8C2.5(b)(1)(A); and subtracting 2 points

because the defendant fully cooperated in the investigation and clearly demonstrated

recognition and affirmative acceptance of responsibility for its criminal conduct, pursuant

to U.S.S.G. § 8C2.5(g)(2). Accordingly, the minimum multiplier to be applied to the base fine is 1.6 and the maximum multiplier is 3.2, pursuant to U.S.S.G § 8C2.6;

(b) The base fine is 20% of the volume of commerce, pursuant to U.S.S.G. § 2R1.1(d)(1) and §8C2.4(a) and (b). The parties agree that the affected volume of commerce attributable to the defendant for Count 1 is $488,650,013.00, and for Count 2 is $908,831,173.00. Pursuant to U.S.S.G. §§3D1.2(d), 3D1.3(b) and 8C2.3(b), the two Counts are grouped, and the base fine for relevant air cargo shipments and passenger flights from the United States is $279,496,237.20 (20% of $1,397,481,186.00). Applying the multipliers of 1.6 and 3.2 to this amount, the fine range for the relevant air cargo shipments and passenger flights is $447,193,979.52 to $894,387,959.04.

( c) The volume of affected commerce calculation in paragraph 8(b) above does not include commerce related to the defendant's cargo shipments on trans-Atlantic routes into the United States. The defendant takes the position that any agreements reached with competitors with respect to cargo shipments on trans-Atlantic routes into the United States should not be included in the defendant's volume of affected commerce calculation pursuant to U.S.S.G. § 2R1.1(d)(1). The United States disputes the defendant's position and contends that the defendant's cargo shipments on trans-Atlantic routes into the United States during the charged period violated the U.S. antitrust laws. Moreover, the United States asserts that a Guidelines fine calculation that fails to account for cargo shipments into the United States affected by the charged cargo conspiracy would understate the seriousness of, and the harm caused to U.S. victims by, the offenses and would not provide just punishment.

9

(d)  Notwithstanding the early cooperation and substantial assistance provided by the

defendant in this matter, the parties recognize the complexity of litigating the issues set

forth in Paragraph 8(c) and the resulting burden on judicial and party resources, and

agree that the appropriate resolution of this issue is to impose, for the cargo portion of the

recommended sentence, a fine above what would be the bottom of the Guidelines

sentencing range for the cargo conspiracy in order to reflect commerce attributable to

cargo shipments on trans-Atlantic routes into the United States.  The parties agree that

the appropriate fine for the commerce affected by defendant's participation in the cargo

conspiracy is $200,000,000, which reflects this upward adjustment from what would be

the bottom of the applicable Guidelines range, based solely on the volume of commerce

attributable to the defendant for Count I as identified in Paragraph 8(b).  The parties

agree that the appropriate fine for the commerce affected by the defendant's participation

in the passenger conspiracy should be the statutory maximum, $100,000,000, for a total

fine for the charged conspiracies of $300,000,000.

(e)  Subject to the full and continuing cooperation of the defendant, as described in

Paragraph 12 below of this Plea Agreement, and prior to sentencing in this case, the

United States agrees that it will make a motion, pursuant to U.S.S.G. §8C4.1, for a

downward departure from the Guidelines fine range of $447,193,979.52 to

$894,387,959.04 and request that the Court impose a fine of $300,000,000 because of the

defendant's substantial assistance in the government's investigation and prosecutions of

violations of federal criminal law in the air transportation industry.

(f)  The defendant understands that the Court will order it to pay a $400 special

assessment per count, pursuant to 18 U.S.C. § 3013(a)(2)(B), in addition to any fine imposed.

(g) Based on the defendant's substantial assistance and improvements to its corporate compliance program, the United States and the defendant will jointly recommend that no term of probation be imposed, but the parties understand that the Court's denial of this request will not void this Plea Agreement.

(h) The United States and the defendant jointly submit that this Plea Agreement, together with the record that will be created by the United States and the defendant at the plea and sentencing hearings, and the further disclosure described in Paragraph 9, will provide sufficient information concerning the defendant, the crimes charged in this case, and the defendant's role in the crimes to enable the meaningful exercise of sentencing authority by the Court under 18 U.S.C. § 3553. The United States and defendant agree to request jointly that the Court accept the defendant's guilty pleas and impose sentence on an expedited schedule as early as the date of arraignment, based upon the record provided by the defendant and the United States, under the provisions of Fed. R. Crim. P. 32(c)(1)(A)(ii) and U.S.S.G. §6A1.1. The Court's denial of the request to impose sentence on an expedited schedule will not void this Plea Agreement.

(i) The United States contends that had this case gone to trial, the United States would have presented evidence to prove that the gain derived from or the loss resulting from the charged cargo offense is sufficient to justify the $200 million cargo portion of the recommended sentence set forth in this paragraph, pursuant to 18 U.S.C. § 3571(d). For purposes of these pleas and sentencing only, the defendant waives its rights to contest

11

this calculation.

9.  Subject to the ongoing, full, and truthful cooperation of the defendant described in Paragraph 12 of this Plea Agreement, and before sentencing in the case, the United States will fully advise the Court and the Probation Office of the fact, manner, and extent of the defendant's cooperation and its commitment to prospective cooperation with the United States' investigation and prosecutions, all material facts relating to the defendant's involvement in the charged offenses, and all other relevant conduct.

10.  The United States and the defendant understand that the Court retains complete discretion to accept or reject the recommended sentence provided for in Paragraph 8 of this Plea Agreement.

(a)  If the Court does not accept the recommended sentence, the United States and the defendant agree that this Plea Agreement, except for Paragraph 10(b) below, shall be rendered void.

(b)  If the Court does not accept the recommended sentence, the defendant will be free to withdraw its guilty pleas (Fed. R. Crim. P. 11(c)(5) and (d)).  If the defendant withdraws its pleas of guilty, this Plea Agreement, the guilty pleas, and any statement made in the course of any proceedings under Fed. R. Crim. P. 11 regarding the guilty pleas or this Plea Agreement or made in the course of plea discussions with an attorney for the government shall not be admissible against the defendant in any criminal or civil proceeding, except as otherwise provided in Fed. R. Evid. 410.  In addition, the defendant agrees that, if it withdraws its guilty pleas pursuant to this subparagraph of the Plea Agreement, the statute of limitations period for any offense referred to in Paragraph 14 of

12

this Plea Agreement shall be tolled for the period between the date of the signing of the Plea Agreement and the date the defendant withdrew its guilty pleas or for a period of sixty (60) days after the date of the signing of the Plea Agreement, whichever period is greater.

11.    In light of pending civil class action lawsuits filed against the defendant, which potentially provide for a recovery of a multiple of actual damages, the United States agrees that it will not seek restitution for the offenses charged in the Information.

### DEFENDANT'S COOPERATION

12.    The defendant and its subsidiaries will cooperate fully and truthfully with the United States in the prosecution of this case, the conduct of the current federal investigation of violations of federal antitrust and related criminal laws involving the sale of international air cargo and/or passenger transportation services, any other federal investigation resulting therefrom, and any litigation or other proceedings arising or resulting from any such investigation to which the United States is a party ("Federal Proceeding"). The ongoing, full, and truthful cooperation of the defendant and its subsidiaries shall include, but not be limited to:

(a) producing to the United States all non-privileged documents, information, and other materials wherever located, in the possession, custody, or control of the defendant or any of its subsidiaries, requested by the United States in connection with any Federal Proceeding; and

(b) using its best efforts to secure the ongoing, full, and truthful cooperation, as defined in Paragraph 13 of this Plea Agreement, of the current and former directors, officers, and employees of the defendant or any of its subsidiaries as may be requested by

13

the United States, but excluding Ian Barrigan, Andreas Boppart, Alan Burnett, Iain

Burns, Andrew Crawley, Martin George, Gareth Kirkwood, Robert Kujala, Anthony

Nothman, and Keith Packer, including making these persons available in the United

States and at other mutually agreed-upon locations, at the defendant's expense, for

interviews and the provision of testimony in grand jury, trial, and other judicial

proceedings in connection with any Federal Proceeding.

13.     The ongoing, full, and truthful cooperation of each person described in Paragraph

12(b) above will be subject to the procedures and protections of this paragraph, and shall

include, but not be limited to:

(a) producing in the United States and at other mutually agreed-upon locations all

non-privileged documents, including claimed personal documents, and other materials,

wherever located, requested by attorneys and agents of the United States;

(b) making himself or herself available for interviews in the United States and

at other mutually agreed-upon locations, not at the expense of the United States, upon the

request of attorneys and agents of the United States;

(c) responding fully and truthfully to all inquiries of the United States in connection

with any Federal Proceeding, without falsely implicating any person or intentionally

withholding any information, subject to the penalties of making false statements (18

U.S.C. § 1001) and obstruction of justice (18 U.S.C. § 1503, *et seq.*);

(d) otherwise voluntarily providing the United States with any non-privileged

material or information not requested in (a) - (c) of this paragraph that he or she may

have that is related to any Federal Proceeding;

(e) when called upon to do so by the United States in connection with any Federal

14

Proceeding, testifying in grand jury, trial, and other judicial proceedings in the United

States fully, truthfully, and under oath, subject to the penalties of perjury (18 U.S.C.

§ 1621), making false statements or declarations in grand jury or court proceedings (18

U.S.C. § 1623), contempt (18 U.S.C. §§ 401-402), and obstruction of justice (18 U.S.C.

§ 1503, *et seq.*); and

(f)  agreeing that, if the agreement not to prosecute him or her in this Plea

Agreement is rendered void under Paragraph 15(c), the statute of limitations period for

any Relevant Offense as defined in Paragraph 15(a) shall be tolled as to him or her for the

period between the date of the signing of this Plea Agreement and six (6) months after

the date that the United States gave notice of its intent to void its obligations to that

person under the Plea Agreement.

## GOVERNMENT'S AGREEMENT

14.    Upon acceptance of the guilty pleas called for by this Plea Agreement and the

imposition of the recommended sentence, and subject to the cooperation requirements of

Paragraph 12 of this Plea Agreement, the United States agrees that it will not bring further

criminal charges against the defendant or any of its subsidiaries for any act or offense committed

before the date of this Plea Agreement that was undertaken in furtherance of an antitrust

conspiracy involving the sale of international air cargo transportation services to and from the

United States and/or passenger transportation services between the United States and the United

Kingdom or undertaken in connection with any investigation of such a conspiracy.  The

nonprosecution terms of this paragraph do not apply to civil matters of any kind, to any violation

of the federal tax or securities laws, or to any crime of violence.

15.    The United States agrees to the following:

15

(a)  Upon the Court's acceptance of the guilty pleas called for by this Plea Agreement and the imposition of the recommended sentence and subject to the exceptions noted in Paragraph 15(c), the United States will not bring criminal charges against any current or former director, officer, or employee of the defendant or its subsidiaries for any act or offense committed before the date of this Plea Agreement and while that person was acting as a director, officer, or employee of the defendant or its subsidiaries that was undertaken in furtherance of an antitrust conspiracy involving the sale of international air cargo transportation services to and from the United States and/or passenger transportation services between the United States and the United Kingdom or undertaken in connection with any investigation of such a conspiracy ("Relevant Offense"), except that the protections granted in this paragraph shall not apply to Ian Barrigan, Andreas Boppart, Alan Burnett, Iain Burns, Andrew Crawley, Martin George, Gareth Kirkwood, Robert Kujala, Anthony Nothman, and Keith Packer.

(b)  Should the United States determine that any current or former director, officer, or employee of the defendant or its subsidiaries may have information relevant to any Federal Proceeding, the United States may request that person's cooperation under the terms of this Plea Agreement by written request delivered to counsel for the individual (with a copy to the undersigned counsel for the defendant) or, if the individual is not known by the United States to be represented, to the undersigned counsel for the defendant;

(c)  If any person requested to provide cooperation under Paragraph 15(b) fails to comply with his or her obligations under Paragraph 13, then the terms of this Plea Agreement as they pertain to that person, and the agreement not to prosecute that person

16

granted in this Plea Agreement, shall be rendered void;

(d) Except as provided in Paragraph 15(e), information provided by a person described in Paragraph 15(b) to the United States under the terms of this Plea Agreement pertaining to any Relevant Offense, or any information directly or indirectly derived from that information, may not be used against that person in a criminal case, except in a prosecution for perjury (18 U.S.C. § 1621), making a false statement or declaration (18 U.S.C. §§ 1001, 1623), or obstruction of justice (18 U.S.C. § 1503, *et seq.*);

(e) If any person who provides information to the United States under this Plea Agreement fails to comply fully with his or her obligations under Paragraph 13 of this Plea Agreement, the agreement in Paragraph 15(d) not to use that information or any information directly or indirectly derived from it against that person in a criminal case shall be rendered void;

(f) The nonprosecution terms of this paragraph do not apply to civil matters of any kind, to any violation of the federal tax or securities laws, or to any crime of violence; and

(g) Documents provided under Paragraphs 12(a) and 13(a) shall be deemed responsive to outstanding grand jury subpoenas issued to the defendant or any of its subsidiaries.

16.    The United States agrees that when any person travels to the United States for interviews, grand jury appearances, or court appearances pursuant to this Plea Agreement, or for meetings with counsel in preparation therefor, the United States will take no action, based upon any Relevant Offense, to subject such person to arrest, detention, or service of process, or to prevent such person from departing the United States. This paragraph does not apply to an

individual's commission of perjury (18 U.S.C. § 1621), making false statements (18 U.S.C. § 1001), making false statements or declarations in grand jury or court proceedings (18 U.S.C. § 1623), obstruction of justice (18 U.S.C. § 1503, *et seq.*), or contempt (18 U.S.C. §§ 401-402) in connection with any testimony or information provided or requested in any Federal Proceeding.

17.    The defendant understands that it may be subject to administrative action by federal or state agencies other than the United States Department of Justice, Antitrust Division, based upon the convictions resulting from this Plea Agreement, and that this Plea Agreement in no way controls whatever action, if any, other agencies may take. However, the United States agrees that, if requested, it will advise the appropriate officials of any governmental agency considering such administrative action of the fact, manner, and extent of the cooperation of the defendant and subsidiaries as a matter for that agency to consider before determining what administrative action, if any, to take.

## REPRESENTATION BY COUNSEL

18.    The defendant has been represented by counsel and is fully satisfied that its attorneys have provided competent legal representation. The defendant has thoroughly reviewed this Plea Agreement and acknowledges that counsel has advised it of the nature of the charges, any possible defenses to the charges, and the nature and range of possible sentences.

## VOLUNTARY PLEA

19.    The defendant's decision to enter into this Plea Agreement and to tender pleas of guilty is freely and voluntarily made and is not the result of force, threats, assurances, promises, or representations other than the representations contained in this Plea Agreement. The United States has made no promises or representations to the defendant as to whether the Court will accept or reject the recommendations contained within this Plea Agreement.

18

## VIOLATION OF PLEA AGREEMENT

20.    The defendant agrees that, should the United States determine in good faith,

during the period that any Federal Proceeding is pending, that the defendant or any of its

subsidiaries have failed to provide full and truthful cooperation, as described in Paragraph 12 of

this Plea Agreement, or has otherwise violated any provision of this Plea Agreement, the United

States will notify counsel for the defendant in writing by personal or overnight delivery or

facsimile transmission and may also notify counsel by telephone of its intention to void any of its

obligations under this Plea Agreement (except its obligations under this paragraph), and the

defendant and its subsidiaries shall be subject to prosecution for any federal crime of which the

United States has knowledge including, but not limited to, the substantive offenses relating to the

investigation resulting in this Plea Agreement. The defendant and its subsidiaries agree that, in

the event that the United States is released from its obligations under this Plea Agreement and

brings criminal charges against the defendant or its subsidiaries for any offense referred to in

Paragraph 14 of this Plea Agreement, the statute of limitations period for such offense shall be

tolled for the period between the date of the signing of this Plea Agreement and six (6) months

after the date the United States gave notice of its intent to void its obligations under this Plea

Agreement.

21.    The defendant understands and agrees that in any further prosecution

of it or its subsidiaries resulting from the release of the United States from its obligations under

this Plea Agreement, because of the defendant's or its subsidiaries' violation of the Plea

Agreement, any documents, statements, information, testimony, or evidence provided by it, its

subsidiaries, or current or former directors, officers, or employees of it or its subsidiaries to

attorneys or agents of the United States, federal grand juries, or courts, and any leads derived

19

therefrom, may be used against it or its subsidiaries in any such further prosecution. In addition, the defendant unconditionally waives its right to challenge the use of such evidence in any such further prosecution, notwithstanding the protections of Fed. R. Evid. 410.

## ENTIRETY OF AGREEMENT

22.    This Plea Agreement constitutes the entire agreement between the United States and the defendant concerning the disposition of the criminal charges in this case. This Plea Agreement cannot be modified except in writing, signed by the United States and the defendant.

23.    The undersigned is authorized to enter this Plea Agreement on behalf of the defendant as evidenced by the Resolution of the Board of Directors of the defendant attached to, and incorporated by reference in, this Plea Agreement.

24.    The undersigned attorneys for the United States have been authorized by the Attorney General of the United States to enter this Plea Agreement on behalf of the United States.

25.    A facsimile signature shall be deemed an original signature for the purpose of executing this Plea Agreement. Multiple signature pages are authorized for the purpose of executing this Plea Agreement.

DATED: _7/31/07_

BY: _____
BRITISH AIRWAYS PLC
By: MARIA DA CUNHA
Its: HEAD OF LEGAL &
GOVERNMENT & INDUSTRY AFFAIRS

Respectfully submitted,

BY: _____
Mark R. Rosman, Assistant Chief
Brent Snyder, Trial Attorney
Mark C. Grundvig, Trial Attorney
Kathryn M. Hellings, Trial Attorney
Elizabeth Aloi, Trial Attorney

20

BY: _____

  Daryl A. Libow

  Sullivan & Cromwell, LLP

  1701 Pennsylvania Ave., NW

  Washington, DC 20006

  Tel: (202) 956-7500

  Fax: (202) 293-6330

  Steven R. Peikin

  125 Broad Street

  New York, NY 10004

  Tel: (212) 558-4000

  Fax: (212) 558-3588

  Counsel for British Airways Plc

U.S. Department of Justice

Antitrust Division

1401 H Street, N.W.

Suite 3700

Washington, D.C. 20530

Tel.: (202) 307-6694

 Fax: (202) 514-6525

**Alan Buchanan**
Company Secretary

 **BRITISH AIRWAYS**

Waterside (HBB3)
PO Box 365 Harmondsworth UB7 0GB UK
Tel +44 (0)20 8738 6877
Fax +44 (0)20 8738 9800
Telex 8813983 BAWYSC G Cables Britishair
email alan.buchanan@ba.com

## CERTIFICATE OF SECRETARY

I, Alan Buchanan, the duly elected Secretary of British Airways Plc, do hereby certify that the attached copy of the resolutions adopted by the Board of Directors of British Airways Plc at a meeting held on 16 July 2007, is true, correct and complete, that said resolutions were duly adopted and that said resolutions have not been amended, modified or repealed, and remain in full force and effect, as of the date hereof.

IN WITNESS WHEREOF, I have hereunto set my hand and the seal of British Airways Plc this 30th day of July, 2007.

Alan Buchanan
Secretary
British Airways Plc

British Airways Plc

Extract from the draft Minutes of a Meeting of the Board of Directors of British Airways Plc held on 16 July, 2007.

1639.5    The Board resolved that the Chairman and the Chief Executive should be authorised to agree the final settlements with the regulators and to the terms of any announcements to be made in this regard.  Subject to that caveat, the Board:

RESOLVED, that the execution, delivery and performance of that certain Plea Agreement, by and among British Airways Plc and the United States Department of Justice, in substantially the form made available to the Board ("Plea Agreement"), is hereby approved;

RESOLVED, that any Director, the Secretary, Mr Robert Webb, General Counsel and Ms Maria da Cunha, Head of Legal and Government and Industry Affairs, be and each of them with power to act alone hereby is authorized and empowered and directed, for and on behalf of the Company, to execute and deliver the Plea Agreement;

RESOLVED, that any Director, the Secretary, the General Counsel and the Head of Legal and Government and Industry Affairs, be and each of them with power to act alone hereby is authorized, empowered and directed to represent the Company at any hearing in order to waive any and all rights of the Company referred to in the Plea Agreement and to plead guilty at such hearing, for and on behalf of the Company, in accordance with the terms therein; and

RESOLVED, that any Director, the Secretary, the General Counsel and the Head of Legal and Government and Industry Affairs, be and each of them with power to act alone hereby is authorized, empowered and directed, for and on behalf of the Company to prepare and deliver or cause to be prepared and delivered and to execute all documents and take or cause to be taken such further actions as she may deem necessary, appropriate and advisable to fully effectuate the intent of the foregoing resolutions and to comply with the provisions of any of the documents and instruments approved or authorized hereby.